IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

JAMIE L. MARSHALL, )
 )
        Plaintiff, )
 )
v. ) Case No. CIV-06-230-KEW
 )
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
 )
        Defendant. )

**OPINION AND ORDER**

Plaintiff Jamie L. Marshall (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do

his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ."  42 U.S.C. §423(d)(2)(A).  Social Security regulations implement a five-step sequential process to evaluate a disability claim.  *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries:  first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied.  Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted).  The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform.  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on May 25, 1960 and was 45 years old on the date of the ALJ's decision. She completed her education through the ninth grade. Claimant previously worked as a house cleaner, cook/waitress, laborer, and nurse's aide. Claimant alleges an inability to work beginning February 25, 2002, due to myofascial pain syndrome of the upper back and neck, chronic lower back pain syndrome with radiculopathy on the right side, degenerative joint and/or disk disease on the lumbar and cervical spine, depression, hypertension, and diabetes.

### Procedural History

On May 12, 2003, Claimant protectively filed for supplemental security income benefits under Title XVI (42 U.S.C. § 401, *et*

*seq.*). Claimant's application for benefits was denied initially and upon reconsideration. A hearing was conducted by ALJ Charles Headrick on November 22, 2005. Thereafter, the ALJ denied benefits in a decision rendered December 30, 2005. The Appeals Council denied Claimant's request for review on April 7, 2006. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant's medical conditions were severe, they did not meet a Listing and Claimant retained a residual functional capacity ("RFC") to allow her to perform light or sedentary, unskilled work, such as office cleaner, food service worker, order clerk, and assembly worker.

### Errors Alleged for Review

Claimant asserts the ALJ committed error requiring reversal in failing to (1) properly consider the opinions of Claimant's treating physician and afford that opinion controlling weight; (2) engage in a proper credibility analysis; and (3) properly evaluate Claimant's RFC.

### Treating Physician's Opinion

Claimant contends the ALJ failed to properly consider the opinions of Robert Baker, D.O. and afford those opinions the controlling weight that they are due under the law. The record

4

indicates Claimant first saw Dr. Baker on March 14, 2002, complaining of low back pain. Dr. Baker noted he did not "have much in the way of a workup other than lumbar plain films" after Claimant was no longer attended by her prior physician, Dr. Giles. Dr. Baker found Claimant suffered from hypertension and prescribed Zestrill, HCT, Darvocet and Flexeril for her conditions. (Tr. 219).

On October 24, 2002, Claimant again saw Dr. Baker, complaining of ongoing back pain. He found she had an antalgic gait, markedly decreased range of motion in all planes and moderate to severe lumbar paraspinous spasms. He again prescribed Darvocet and Flexeril. (Tr. 218).

On June 11, 2003, Claimant presented to Dr. Baker complaining of back pain. He noted Claimant had a history of degenerative lumbar disk disease. He maintained her drug regime. (Tr. 216).

On September 2, 2003, Claimant presented to Dr. Baker with hypertension, and upper and lower back pain. He noted she had been taking Darvocet for her back without improvement as well as anti-inflammatory drugs, which she could not tolerate. Claimant was experiencing lumbar spasms and fluctuations in her blood pressure and an elevated heart rate. Dr. Baker prescribed Lorcet Plus for her pain at that time and Zestoretic and Toprol XL for her blood pressure and heart rate. (Tr. 204).

On September 25, 2003, Dr. Baker again saw Claimant, finding

5

she was experiencing back pain. He found marked lumbar pain and spasms, as a part of diagnosed lumbar disk disease. He also noted a decrease in range of motion. (Tr. 303).

On June 24, 2004, Dr. Baker attended Claimant. She complained of severe back pain, exhibiting a positive Lloyd's sign. (Tr. 301). On July 6, 2004, Dr. Baker diagnosed Claimant with non-insulin dependent diabetes and prescribed Amaryl for the condition. (Tr. 300).

On December 30, 2004, Claimant saw Dr. Baker for back pain which radiated down her right leg. He found Claimant was not taking her Amaryl. He prescribed Lorcet and Flexeril for her back pain and Actos for her diabetes. (Tr. 299).

On October 24, 2005, Dr. Baker completed a Physical Exertion Limitation form on Claimant. He concluded Claimant could perform less than sedentary work, precluded from full sedentary work by limitations upon Claimant's ability to lift more than 10 pounds, carry, stand, or walk. Dr. Baker concluded Claimant suffered from "[c]hronic low back pain. Has failed epidural steroid injections." (Tr. 294). On that same date, Claimant complained of mid-back pain, arm and leg numbness and an inability to sleep. (Tr. 295). Dr. Baker prescribed Trazodone, an antidepressant. Id.

In his decision, the ALJ noted Claimant's visits with Dr. Baker. He then noted "Dr. Baker completed a form in reference to [Claimant's] 'ability to work.'" (Tr. 26). He then makes obvious

6

quotational references to a report which was, in fact, authored by Dr. Torsten Seubold, Claimant's chiropractor. Dr. Seubold makes various references in this report with regard to Claimant's ability to move and the effect of the noted limitations upon her ability to work. (Tr. 306-308). Still, the ALJ attributes this report throughout to Dr. Baker. (Tr. 26). The ALJ concludes that the records from Dr. Baker are inconsistent with the remainder of the record. He specifically rejects either the report of Dr. Baker, labeled on its face as a Physical Exertion Limitation form, or the report of Dr. Seubold, which he attributed to Dr. Baker, both of which were completed at approximately the same time. (Tr. 28). He rejected Dr. Baker's opinions because they "display[] a lack of objectivity" and rely "quite heavily on the subjective report of symptoms and limitations provided by the claimant." Id.

The ALJ's analysis of Dr. Baker's opinions is wholly lacking in both its ultimate conclusion and the basis for its rejection. In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the

7

opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific,

legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

Here, the ALJ specifically states he rejects Dr. Baker's opinions and, apparently, gave them no weight. He failed, however, to engage in either the analysis required to discount a treating physician's opinion such that it is not afforded controlling weight or the required evaluation to afford the opinion deference. The ALJ appears to have concluded without foundation that Dr. Baker's opinions were weighted to Claimant's benefit. This represents supposition and a level of divining which is inappropriate in the treating physician analysis. Therefore, remand is appropriate to correct this error.

Additionally, remand is warranted since the ALJ clearly misinterpreted the source of a report with regard to which the ALJ is heavily critical. Attributing the report to the wrong source may have tainted the ALJ's opinion as to Dr. Baker's reliability and requires re-examination on remand.

### Credibility Analysis

Claimant objects to the ALJ's rejection of her testimony based upon the lack of credibility. The ALJ's credibility analysis is scant, at best. He specifically found Claimant's testimony as to her impairments were "inconsistent and unpersuasive." (Tr. 28). He does not cite to evidence in the record which specifically belies Claimant's testimony. It is well-established that "findings

as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. The ALJ failed to correlate his rejection of Claimant's testimony to contradictory objective medical evidence. On remand, the ALJ should re-evaluate his credibility findings in light of the totality of the evidence in the record and make appropriate findings linked to the evidence in supporting his ultimate conclusions.

**RFC Determination**

As noted, the ALJ failed to engage in a proper analysis of Dr. Baker's records which necessarily may have tainted his RFC findings. Additionally, his opinions as to Claimant's RFC lacks references to the evidentiary record. As such is the case, he should engage in a new RFC evaluation based upon all evidence on remand.

**Conclusion**

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent

with this Order.

DATED this 17th day of August, 2007.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE